# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT <u>CHATTANOOGA</u>

MELISSA TRICELLE FREEMAN,   )
         )
    **Plaintiff,**    )
         )    CASE NO.  1:16-cv-502
**v.**        )
         )
**LIBERTY MUTUAL INSURANCE**  )         FILED
**COMPANY and DOES I-X,**    )
         )    DEC 21 2016
    **Defendants.**   )
         Clerk, U. S. District Court
         Eastern District of Tennessee
         At Chattanooga

## COMPLAINT

Comes now, Melissa Freeman ("Plaintiff") and lodges this complaint against Liberty Mutual Insurance Company ("Defendant") for, inter alia, breach of contract, bad faith, and misrepresentation, and demands a trial by jury of all issues and for her causes of action alleges:

### FACTS COMMON TO MORE THAN ONE CAUSE OF ACTION

1.   Jurisdiction is appropriate before this Honorable Court pursuant to T.C.A. § 16-10-106; 56-5-101 et seq., and 16-10-113.

2.   Venue is proper before this Honorable Courant pursuant to T.C.A. § 20-4-102.

3.   Plaintiff is an honorably discharged Veteran of the United States Army.

4.   Plaintiff is ignorant of the true names or capacities of the additional defendants sued here under the fictitious names DOE I through DOE X, inclusive.

5.   Plaintiff is informed and believes that Defendant and each of the individual DOE defendants was responsible in some manner for the occurrences and injuries alleged in this complaint.

6.   At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every defendant was the agent or employee of each and every other defendant.

7. Plaintiff complains against defendants, and each of them, demands a trial by jury of all issue and for causes of action alleges:

8. Plaintiff is ignorant of the true names or capacities of the defendants sued here under the fictitious names DOE I through DOE X, inclusive. Plaintiff is informed and believes that each of the DOE defendants was responsible in some manner for the occurrences and injuries alleged in this complaint.

9. At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every defendant was the agent or employee of each and every other defendant. In doing the things alleged in the causes of action into which this paragraph is incorporated by reference, each and every defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission, and authorization of each of the remaining defendants. All actions of each defendant alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other defendant.

10. At the pertinent times mentioned in this complaint, Defendant Liberty Mutual Insurance Company is a corporation incorporated in the State of Massachusetts and licensed to do business in the State of Tennessee.

11. At the pertinent times mentioned in this complaint, DOE I was a resident of the State of California.

12. DOE I and other Defendants DOE'S II- X will be referred to as "Individual Defendants" or by their respective names.

13. On or about December 1, 2002, Plaintiff contracted with Liberty Mutual Insurance Company for insurance to cover the risk of loss of her home. Plaintiff faithfully and dutifully fulfilled her obligations under the insurance contract for approximately six (6) years. Plaintiff and Defendant entered into written agreement which included oral, written and implied-in-fact agreements. The basic terms of the agreement provided that Plaintiff would pay a certain sum for specific and general coverage of her home and belongings (this coverage was required by her mortgage company.) No exceptions exist which fall under the circumstances suffered by Plaintiff as set forth herein below. *See **Exhibit A** - a true and correct copy of which is attached hereto.*

14. At all times, Plaintiff performed her obligations under the agreement, making timely payment and protecting her home ownership interests as required by the mortgage company and Liberty Mutual Insurance Company. On or about July 1, 2013, Defendant renewed Plaintiff's insurance agreement, notifying Plaintiff of the satisfactory performance of her obligations.

15. Defendant denied Plaintiff's claim of loss. Moreover, Defendant, as set forth herein, terminated without good cause and despite her continued satisfactory performance, in violation of the insurance contract.

16. On or about August 22, 2013, Plaintiff's home burned as a result of a tragic fire.

17. Plaintiff was gone, to a physician's disability hearing with the VA.

18. Fortunately, neither Plaintiff, nor children were injured.

19. Plaintiff executed a Sworn Statement in Proof of loss and provided the same to Defendants. *See **Exhibit B** - a true and correct of which is attached hereto.*

20. The loss totaled (actual value) Two Hundred Thirty-Nine Thousand Three Hundred Eighty-One Dollars and Seventy- Five Cents ($239, 381.75). *Id.*

21. Because of the complete and total loss, Plaintiff incurred several expenses and additional damages than the utter destruction of her home and her belongings.

22. Specifically, Plaintiff had to locate suitable shelter and so leased a dwelling for Five Hundred and Eighty ($580.00) per month.

23. More importantly, because Defendant and individual defendants denied her claim of loss, Plaintiff has also been required to make mortgage payment for the last twelve (12) months for a home she cannot live in.

24. Plaintiff also has been required to pay escrow and interest on the uninhabitable home.

25. Plaintiff was recently informed that the house would be place in default and subsequently sold as a result of her inability to make the mortgage payment on a home she cannot live in and pay to rent a home for her and her two (2) children.

26. Additionally, Liberty Mutual Insurance Company, in concert with Doe's I –X, cancelled Plaintiff's insurance on the property. Accordingly, Plaintiff was notified of an acceleration of an event of default.

27. Plaintiff has suffered and continues to suffer at the humiliation thrust upon her by Defendant and the individual DOE defendant I –X.

28. Plaintiff is under the care of a physician for the emotional distress she suffers from the financial worries caused by Defendant and the individual Doe defendant's actions taken in concert and in a conspiracy to deny her claim of loss for the fire which ravaged her home, her belongings, and her life.

29. At all times material and relevant hereto, Liberty Mutual Insurance Company was the company with which Plaintiff contracted.

30. At all times material and relevant hereto, Defendant was the company under an obligation to deal fairly and appropriately with Plaintiff's clam of loss. In fact, Defendant was to put Plaintiff's financial and monetary interest above its own. At all time and relevant hereto, Defendant failed to put Plaintiff's financial and monetary interest above its own.

31. Styled as an examination under oath, Defendant interviewed Plaintiff without legal counsel present. Counsel for Liberty Mutual Insurance Company never inquired if Plaintiff had legal counsel. Counsel for Liberty Mutual Insurance Company never asked if Plaintiff would like to obtain legal counsel. Counsel never informed Plaintiff that she had the right to terminate

the interview. Defendant would try to rely on statements made by Plaintiff during this interview. Interestingly enough, Plaintiff had not retained counsel.

32. Liberty Mutual Insurance Company and DOE's I-X take the position that Plaintiff burned herself out of her home. This theory is ludicrous. Plaintiff is a veteran. Plaintiff has multiple children. Plaintiff was employed. Plaintiff was cleared by both Chattanooga Fire Department and Chattanooga Police Department.

33. The Chattanooga Fire Department investigate the cause of the fire. *See Exhibit C – a true and correct copy of which is attached hereto.*

34. The Chattanooga Police even arrested Plaintiff, believing the cause of the fire was arson, *See Exhibit D – a true and correct copy of which is attached hereto.*

35. Both the Chattanooga Fire Department and the Chattanooga Police Department, after extensive investigation and expert review, determined that the fire was not arson and the result of an accident. Chattanooga concluded the same in conjunction with the District Attorney as the charges were dismissed against Plaintiff. *See Exhibit E- a true and correct copy of which is attached hereto.*

36. Despite the conclusions of professional, Defendant's employees, from three thousand (3,000) miles away in California, somehow managed to conclude that they did not agree with Chattanooga Police or Chattanooga Fire and denied Plaintiff's claim of loss.

## FIRST CAUSE OF ACTION

### Breach of Contract

37. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 35 and re-alleges tem fully herein.

38. As a first, separate and distinct cause of action, Plaintiff complains against Defendants Liberty Mutual Insurance and DOES I through X, and each of them, and for a cause of action alleges:

39. Plaintiff undertook and continued her obligations under the agreement and duly performed all of the conditions of the agreement to be performed by her until prevented by defendants from further performance. Additionally, Plaintiff suffered a loss as defined under the agreement and Liberty Mutual Insurance Company and individual defendants acting in concert, or on their own, have refused to compensate Plaintiff for her loss, despite no good faith evidence that the loss should not be compensated. Plaintiff had, at all times, bee ready, willing, and able to perform all of the conditions of the agreement to be performed by her.

40. On or about August 22, 2013 Defendant and individual Defendants Doe I through X, acting in concert with Liberty Mutual Insurance Company, breached the oral, written and implied-in-fact insurance agreement by refusing to compensate Plaintiff for her loss.
    *See **Exhibit F**- a true and correct copy of which is attached hereto.*

41. Plaintiff suffered damages legally caused by breach of contract as stated in the section below entitled "DAMAGES", which is incorporated here to the extent pertinent as if set forth here in full.

## SECOND CAUSE OF ACTION
### Bad Faith

42. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 41 and re-alleges them fully herein.

43. As a second, separate and distinct cause of action, Plaintiff complain against Defendants Liberty Mutual Insurance Company and DOES I through X, and each of them, and for a cause of action alleges:

44. The law imposed duties on Defendants ad DOES I through X in connection with the insurance agreement to act fairly and in good faith towards Plaintiff. Defendants covenanted to give full cooperation to Plaintiff in her performance under the insurance agreement and to refrain from any act which would prevent or impede compensating Plaintiff for loss for any of the conditions of the insurance agreement such as loss by fire, which would deny the insurance agreement, or which would prevent Plaintiff from receiving the benefits of the insurance agreement.

45. On or about August 22, 2013, Defendant and DOES I through X breached these duties imposed by law in connection with the insurance agreement by interfering with the Plaintiff in the performance of her job duties, by discharging Plaintiff and denying the insurance agreement without cause as set forth in the insurance agreement and contrary to the established conclusions of law enforcement, fire professionals, including the Office of the District Attorney of Hamilton County, Tennessee, and a court of law where the burden is much higher than that of Liberty Mutual Insurance Company and Defendants DOES I through X to act in the best financial and monetary interests of Plaintiff and in bad faith, by intentionally relying upon speculation and conjecture so that it would appear that there was good cause to deny Plaintiff compensation for her complete and total loss under the insurance agreement when in fact there was not and Liberty Mutual Insurance Company and Defendants DOE I through X knew there was not, and by attempting to cover up the fact that there was not god cause to deny Plaintiff's claim of loss.

46. Plaintiff suffered damages legally caused by bad faith as stated in the section below entitled "DAMAGES" which is incorporated here to the extent pertinent as if set forth her in full.

## THIRD CAUSE OF ACTION

### Intentional Misrepresentation by Making of Promises Without Intent to Perform

47. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 46 and re-alleges them fully herein.

48. As a third, separate and distinct cause of action, Plaintiff complains against Defendant and DOES I through X, and for a cause of action alleges:

49. On or about August 22, 2013 and during the term of Plaintiff's insurance agreement, would be secure for as long as her performance was satisfactory, that the insurance agreement would not be terminated without good cause, and the Defendant would compensate Plaintiff for her loss. These promises were each as to material matters.

50. At the time these Defendants made these promises, they did not intend to perform them. In fact, Defendant takes the position that it should deny and refuse to pay claims when first presented.

51. These Defendants made these promises for the purpose of inducing Plaintiff to rely upon them and to act or refrain from acting in reliance upon them.

52. Plaintiff was unaware of these Defendants' intention not to perform their promises. Plaintiff acted in justifiable reliance on defendants' promises by, among other things, remaining insured by Defendant and forbearing the possibility of insurance elsewhere.

53. Plaintiff did not discover the intentional misrepresentation practiced upon her by Defendants until January 1, 2014 TERM, when her claim was denied with no basis in fact in violation of Defendants' promises to her.

54. Plaintiff suffered damages legally caused by the intentional misrepresentation as stated in the section below entitled "DAMAGES", which is incorporated here to the extent pertinent as if set forth here in full.

## FOURTH CAUSE OF ACTION
### Negligent Misrepresentation

55. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 54 and re-alleges them fully herein.

56. As a further, fourth, separate and distinct cause of action, Plaintiff complains against Defendants and DOES I through X, and each of them, and cause of action alleges:

57. Defendant and DOES I through X told Plaintiff that she was performing her duties under the agreement in a manner which Defendant considered satisfactory, and that Plaintiff's insurance agreement would remain secure if she continued to perform her duties in the same manner.

58. In fact, Defendant later professed to have considered Plaintiff's performance at that time to be unsatisfactory. To the extent that statement was true, the representations by Defendants and DOES I through X were untrue, and these Defendants made the representations without any reasonable ground for believing them to be true.

59. These Defendants made these representations for the purpose of inducing Plaintiff to rely upon them and to act or refrain from acting in reliance upon them.

60. Plaintiff reasonably believed that she was performing her duties in a manner which Defendant considered satisfactory and that her insurance agreement would remain secure if she continued to perform her duties in the same manner. Plaintiff acted in justifiable reliance on Defendant's representation by, among other things, continuing to perform her obligations and duties as before, remaining insured by Defendant and forbearing the possibility of insurance elsewhere.

61. Plaintiff did not discover the negligent misrepresentation practiced upon her by Defendants until January 2014, when she was notified that Defendant and Defendants not only denied her claim of loss, but also denied her claim based on nothing more than their suspicions, speculation, and conjecture taken from no concrete or factual information.

62. Plaintiff suffered damages legally caused by the negligent misrepresentation as stated in the section below entitled "DAMAGES", which is incorporated here to the extent pertinent as if set forth here in full.

## FIFTH CAUSE OF ACTION
### Intentional Interference with Business Relations

63. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 62 and re-alleges them fully herein.

64. As a fifth, separate and distinct cause of action, Plaintiff complains against Defendant and DOES I through X, and for good cause of action alleges:

65. At all times mentioned herein Plaintiff and Defendant had an oral, written, and implied-in-fact contract for insurance with the probability of payment for loss suffered by Plaintiff. Plaintiff enjoyed the freedom and privilege of contracting with the other insurance entities but forwent that privilege based on Defendant and DOES I through X's promises. Plaintiff also contracted with her mortgage company to retain insurance on her property. Defendant and DOES I through X, upon denying her claim of total loss and upon terminating her insurance coverage, cause Plaintiff to lose her mortgage, sustain damages as a result of the failure to maintain insurance, and subsequently, lose her home and ability to obtain an affordable home in the future.

66. Defendant and DOES I through X were aware of the oral, written and implied-in-fact contract for insurance and the existence of economic relationship with the mortgage company as well as Plaintiff's ability to contract with another entity for the same insurance at competitive rates.

67. Defendant and DOES I through X intentionally interfered with the contractual relationship between Plaintiff and the mortgage company, as well as Plaintiff and other insurance agencies by their intentional acts designed to cause Plaintiff's continuation with Defendant and forgo moving to another insurance agency and further conspired to act together to deny Plaintiff's claim of loss in favor of their own economic self-interest, rather than remain vigilant and advance Plaintiffs economic interest as set forth in and required by the insurance contract in place between Plaintiff and Defendant.

68. As a legal result of the intentional acts of these defendants, Plaintiff was denied her substantial claim of loss which included losing everything she owned and her dwelling to fire and subsequently, was terminated from her contractual relationship with Liberty Mutual Insurance Company – essentially dropped from insurance coverage, later to have her mortgage company notify her of breach of contract as a result of the lack of insurance caused by Defendant and DOES I through X's conspiratorial acts to deny her claim of loss despite Chattanooga Fire and Chattanooga Police Department's expert conclusions that the fire was not Plaintiff's fault.

69. Plaintiff suffered damages legally caused by intentional interference as stated in the section below entitled "DAMAGES", which is incorporated here to the extent pertinent as if set forth here in full.

## SIXTH CAUSE OF ACTION
### Negligence

70. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 69 and re-alleges them fully herein.

71. As a sixth, separate and distinct cause of action, Plaintiff complains against Defendant and DOES I through X, and for a cause of action alleges:

72. Defendant and DOES I through X owed Plaintiff a duty not to perform the adjuster and investigate responsibilities towards her negligently, not to negligently hire or retain supervisory employees who would improperly supervises DOES I through X, and not to deny Plaintiff's claim of loss favoring Defendant and their own economic interest above Plaintiff's or terminate Plaintiff's insurance coverage to be terminated negligently. These Defendants owed Plaintiff this duty by virtue of the contractual relationship with the Plaintiff and the nature of the relationships, but virtue of the representations made to Plaintively whereby Plaintiff was placed in a manifestly vulnerable position, and by virtue of the agreement not to deny the claim without specific support of good cause, thus avoiding reliance upon conjecture, speculation, and guesses.

73. The contractual relationship was intended to benefit Plaintiff by providing her insurance coverage against total loss she suffered so long as she performed satisfactorily, by providing her with steady coverage against loss, and by providing her with sense of protection, self worth and self confidence deriving from her status as an individual protected from total loss by her contract and with her mortgage company. It was foreseeable, when, Plaintiff was induced to enter into the contractual relationship and throughout Plaintiff's term of agreements, that negligent performance by any of these defendants of their responsibilities in the contractual relationship would be substantially certain to cause Plaintiff severe injury,

both financial and emotional. Further, these defendants occupied a position of trust toward Plaintiff and of superior knowledge, and knew that they occupied such a position.

74. Defendant and DOES I through X negligently supervised Plaintiff's claim of loss by negligently failing to advise her of any deficiencies in her performance, by negligently failing to adequately warn her before termination, by negligently failing to give Plaintiff any notice that they intended to rely on their own suspicion, conjecture, and guesses in favor of their own economic self-interest rather than the expert conclusions of fact from the Chattanooga Fire Department, the analysis of the Office of the District Attorney of Hamilton County, Tennessee, and failed to provide Plaintiff with assistance to obtain any necessary improvements in her performance, or of further facts from experts other that DOES I through X, all employed in some capacity by Liberty Mutual Insurance Company, and by negligently hiring and retaining supervisors who improperly supervise DOES I through X. This negligent supervision by these Defendants, and their negligent hire and retention of unfit supervisors, breached duties owned to Plaintiff by virtue of the insurance agreement and the nature and genesis of the contractual relationship.

75. Defendant and DOES I through x negligently denied Plaintiff's claim of loss and terminated Plaintiff's insurance coverage in favor of their own economic self-interest over Plaintiff's economic interest by negligently evaluating her claim of loss, by negligently failing to conduct an adequate investigation of the facts surrounding the loss and following pro-forma investigatory patterns supported by Defendant in favor of its economic self-interest over its contractual customers like Plaintiff despite her appropriate performance, by negligently failing to consider their duties towards Plaintiff, by total loss and by terminating her insurance coverage, by negligently terminating Plaintiff without sufficient and concrete facts

especially after exert conclusions from the Chattanooga Fire Department, Office of the

District Attorney for Hamilton County, Tennessee, and Chattanooga Police contending that

Plaintiff did nothing wrong, and by negligently hiring and retaining supervisors who

wrongfully denied Plaintiff's claim of total loss and terminated or caused the wrongful

termination of Plaintiff's insurance agreement.

76. Plaintiff suffered damages legally caused by these Defendants' negligence as stated in the

section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if

set forth here in full.

**SEVENTH CAUSE OF ACTION**

**Discharge in Violation of Public Policy**

77. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs

1 through 76 and re-alleges them fully herein.

78. As a seventh, separate and distinct cause of action, Plaintiff complains against Defendant

and DOES I through X, and for cause of action alleges:

79. At all times herein mentioned, Plaintiff was an adult person fully competent to perform the

duties to which she was assigned under the insurance agreement and did so without

wavering.

80. Defendant and DOES I through X discriminated against Plaintiff on the basis of her race and

status as a veteran by denying Plaintiff's claim on the basis of conjecture and speculation

absent concrete facts unlike those concrete facts resolved by the Chattanooga Fire

Department, the Office of the District Attorney for Hamilton County, Tennessee, and the

Chattanooga Police Department. In so discriminating, Defendant and DOES'S I through X

also terminated Plaintiff's insurance coverage in violation of public policy.

81. Said denial, termination and discrimination violated public policy, Tennessee common las
    and Plaintiff's constitutional rights under the Tennessee Constitution, Article I, section 22;
    and Article I, section 20 which prohibit law which impair the obligations of contracts,
    infringe upon individual rights protected by the constitution and which discriminate on the
    basis of race and status as a veteran.

82. Plaintiff suffered damages legally caused by these Defendants' wrongful acts as stated in the
    section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if
    set forth her in full.

## EIGHT CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

83. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs
    1 through 82 and re-alleges them fully herein.

84. As an eighth, separate and distinct cause of action, Plaintiff complains against Defendant and
    DOES I through X , and for a cause of action alleges:

85. On or about July 10, 2013, Plaintiff accepted and executed Defendant's insurance agreement.
    Plaintiff was assured security against total loss of her dwelling and belongings and that the
    Defendant would compensate her for her catastrophic loss as well as that the claim of loss
    would not be denied or the agreement terminated based on Defendant though its conspiracy
    with DOES'S I through X's placing their economic self-interest above Plaintiff's, and as a
    result Plaintiff remained with Defendant under the agreement in reliance on those assurances.

86. Defendant and DOES I through X were in a position of power over Plaintiff, with the potential
    to abuse that power. Plaintiff was in a vulnerable position because of her relative lack of power,
    because of her reliance of Defendants' assurances and forbearance of possibility of becoming
    insured elsewhere, because she had placed her trust in Defendants, because she depended on

her insurance through Liberty Mutual Insurance Company for her security against total, catastrophic loss, and because a wrongful denial of Plaintiff's total claim of loss and termination of Plaintiff's insurance would likely harm Plaintiff's ability to find other insurance, and because of the great disparity in bargaining power between Plaintiff and Defendant and its co-conspirators. Defendants were aware of Plaintiff's vulnerability and the reasons for it.

87. On or about January 2014, TERM, Defendants denied Plaintiff's claim of total loss without good cause or caused her claim to be denied, and confirmed and ratified the denial. Defendants' denial of Plaintiff and the manner in which they accomplished it was outrageous in that Plaintiff paid her insurance premiums timely, was subject to an active insurance agreement, had experts from the Chattanooga Fire Department, the Office of the District Attorney Hamilton County, Tennessee, and the Chattanooga Police Department conclude that no mischief or other subterfuge was involved in the fire, nor was Plaintiff responsible for the fire and in that Defendants at all times intended to deny Plaintiff without good cause, in violation of the insurance agreement, leaving Plaintiff without her insurance coverage and without the security which she derived from her insurance contract with Defendant, and which Defendants knew that she derived from her insurance contract. Defendants denied Plaintiff's claim of total loss because defendant and DOE'S I through X were more concerned with their financial and economic self-interest than with Plaintiff's or her family in losing their home, clothes, toys, shoes, food, and other material possessions.

88. This conduct by defendants was intended to cause Plaintiff emotional distress or was done with reckless disregard of the probability of causing Plaintiff emotional distress.

89. Plaintiff suffered severe emotional distress as a legal result of Defendants' outrageous conduct. Plaintiff suffered severe mental distress, suffering and anguish as a legal result of

Defendants' Outrageous conduct, reacting to her discharge with humiliation, embarrassment, anger, disappointment and worry, all of which is substantial and enduring.

### NINTH CAUSE OF ACTION

### VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
### Liberty Mutual Misled Freeman in Advertisement

90.  Plaintiff re-alleges paragraphs 1 through 89 as if fully set forth herein.

91.  Defendant advertises in print, television, radio and internet medium that it will timely handle all claims, and address issues of its insured's with the simple question – "if you're looking at your house one day and it's there and the next day it's not; what's it going to take to rebuild that?" [http://www.youtube.com/watch?v=KpWJJK-Ev5k].

92.  Defendant violated T.C.A §47-18-104(a), (b) (12) when it failed to respond to Freeman's claim for her total loss, by failing to procure forsenic examination of the premises; failing to examine or depose the Chattanooga Fire Department personnel who cleared Freeman's home of any suspicion of arson; failing to fully examine her loss issues; and avoid seeking relief from its obligations when nothing in the record before the law enforcement authorities or its experts concluded arson.

93.  Freeman who lost her house, belongings, including, but not limited to her toothbrush, to be made whole for the years of payments made to Defendant and rebuild her home and life as advertised, but was misled about the remedy available on her, Defendant misrepresented what it was prepared to do for Freeman's total and catastrophic loss.

94.  As a direct and proximate result of Defendants' actions Freeman has suffered damages totaling in excess of Two Hundred Thirty-Nine Thousand Three Hundred Eighty-One Dollars and Seventy-Five Cents ($239,381.75).

95. WHEREFORE, Plaintiff respectfully requests this Court enter judgement in favor of Plaintiff and against Defendants in an amount to be proven at trial, but well in excess of Two Hundred Thirty-Nine Thousand Three Hundred Eighty-One Dollars Seventy-Five Cents ($239,381.75), together with attorneys' fees and all other relief to which Plaintiff may be entitled.

## TENTH CAUSE OF ACTION
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
### Liberty Mutual Made Misrepresentation

96. Plaintiff re-alleges paragraphs 1 through 95 s if fully set forth herein.

97. Defendant violated T.C.A. §47-18-104(a), (b)(12) by representing that Freeman had rights which she did not and that Defendants had obligations which it did not.

98. Defendant represented that it could determine that Freeman intended to incur a loss. See Exhibit F. Defendant further represented that Freeman engaged in fraudulent conduct, thus superimposing it's judgement as to Freeman's total loss and again, without any forsenic examination of the premises; examination or deposition of the Chattanooga Fire Department personnel who cleared Freeman's home of any suspicion of arson; examination of Freeman's her loss issues; and rejected her total loss claim with no evidentiary support – direct or circumstantial. Defendant merely assuaged its own financial pocketbook by avoiding paying for its obligations as represented to Freeman when nothing in the record before law enforcement authorities or its experts could reasonably conclude arson.

99. As a direct and proximate result of Defendants' actions, Freeman suffered damages totaling in excess of Two Hundred Thirty-Nine Thousand Three Hundred Eighty-One Dollars and Seventy-Five Cents ($239,381.75).

100.     WHEREFORE, plaintiff respectfully requests this Court enter judgement in favor of Plaintiff and against Defendants in an amount to be proven at trial, but well in excess of Two Hundred Thirty-Nine Thousand Three Hundred Eighty-One Dollars and Seventy-Five Cents ($239,381.75), together with the costs, attorneys' fees and all other relief to which the Plaintiff may be entitled.

### ELEVENTH CAUSE OF ACTION
### VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
### Liberty Mutual Created a False Impression

101.     Plaintiff re-alleges paragraphs 1 through 100 as if fully set forth herein.

102.     Defendant violated T.C.A. §47-18-104(a), (b)(21) which prohibits "[u]sing statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, color, usability, or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that a buyer may be switched from the advertised goods or services to other goods or services."

103.     Defendant consistently uses statements and illustrations which create false impression of the grade, quality, value, and which misrepresents treatment of stroke symptoms in such a manner that later, on disclosure of the true facts, Freeman was switched from payment of her total loss claim to denial with no concrete support.

104.     Freeman paid her insurance fee: paid her monthly payments, timely, and properly renewed. Freeman even followed the steps required by the Defendant when declaring a total loss including sitting for her deposition without counsel, and otherwise providing response after response and information to Defendant.

105.    Defendant, however, instead of compensating Freeman for her total loss, instead sold her

illusions about the product it offered, and false impressions as to what she had to do to

recover for her total loss which was not her fault.

106.    As a direct and proximate result of Defendants' actions, Freeman has suffered damages

totaling in excess of Two Hundred Thirty-Nine Thousand Three Hundred Eighty-One

Dollars and Seventy- Five Cents ($239,381.75)

107.    WHEREFORE, Plaintiff respectfully request this Court enter judgment in favor of

Plaintiff and against Defendants n an amount to be proven at trial, but well in excess of Two

Hundred Thirty - Nine Thousand Three Hundred Eighty-One Dollars and Seventy- Five

Cents ($239,381.75), together with costs, attorneys' fees, and all other relief to which

Plaintiff may be entitled.

## TWELFTH CAUSE OF ACTION
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
### Catch-All Provision

108.    Plaintiff re- alleges paragraphs 1 through 107 as it fully set forth herein.

109.    Defendant violated T.C.A §47-18-104(a), (b)(27) which is the catch-all provision for

deceptive trade practices  and act engaged in by Defendant as set forth herein.

110.    Defendant consistently violated the act as set forth herein by including, but not limited to,

using statements and illustrations which create the false impression of the grade, quality,

value, and which misrepresents treatment of stroke symptoms in such a manner that later, on

disclosure of the true facts, Freeman was switched from payment of her total loss claim to

denial with no concrete support.

111.    Freeman paid her insurance fee: paid her monthly payments, timely, and properly

renewed. Freeman even followed the steps required by the Defendant when declaring a total

loss including sitting for her deposition without counsel, and otherwise providing response after response and information to Defendant.

112.     Defendant, however, instead of compensating Freeman for her total loss, instead sold her illusions about the product it offered, and false impressions as to what she had to do to recover for her total loss which was not her fault.

113.     As a direct and proximate result of Defendants' actions, Freeman has suffered damages totaling in excess of Two Hundred Thirty-Nine Thousand Three Hundred Eighty-One Dollars and Seventy- Five Cents ($239,381.75)

114.     WHEREFORE, Plaintiff respectfully request this Court enter judgment in favor of Plaintiff and against Defendants in an amount to be proven at trial, but well in excess of Two Hundred Thirty - Nine Thousand Three Hundred Eighty-One Dollars and Seventy- Five Cents ($239,381.75), together with costs, attorneys' fees, and all other relief to which Plaintiff may be entitled.

## THIRTEENTH CAUSE OF ACTION
## TREBLE DAMAGES FOR VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
### by Liberty Mutual

115.     Plaintiff incorporates by reference Paragraphs 1-114 of the Complaint as if fully stated herein and further states as follows:

116.     Defendant Liberty Mutual is a person within the meaning of the Tennessee Consumer Protection Act, T.C.A §47-18-101, et seq. and thus has standing to bring a T.C.P.A. claim. A stated purpose of the Tennessee Consumer Protection Act is, "To protect consumers and legitimate business enterprises from those who engage in unfair and deceptive acts or practices…"

117.     Plaintiff is entitled to treble damages and attorney's fees.

## DAMAGES

118.    Plaintiff hereby incorporates each and every allegation contained in

Paragraphs 1 through 113 and re-alleges them fully herein.

119.    As a separate and distinct cause of action, Plaintiff complains against Defendants and

DOES I through X, and for damages alleges:

120.    As a legal result of the conduct by Defendants of which Plaintiff complains, Plaintiff

suffered and continues to suffer substantial losses in belongings, dwelling, and in emotional

distress of over Two Hundred Thirty-Nine Thousand Three Hundred Eighty-One Dollars and

Seventy-Five Cents ($239,381.75) and other fees. Plaintiff will seek leave to amend this

Compliant to state a more specific amount or will proceed according to proof at trial.

121.    At the time Plaintiff entered into the insurance agreement and continuing thereafter, all

parties to the agreement contemplated and it was reasonably foreseeable that breach of the

agreement would cause Plaintiff to suffer emotional distress. The terms of the insurance

agreement related to matters which directly concerned Plaintiff's comfort, happiness and

personal welfare, and

Defendants were aware of this at the time they entered into the agreement and continuing

thereafter. The subject matter of the insurance agreement was such as to directly affect

Plaintiff's economic interests, security and emotional well being, and defendants were aware

of this at the time they entered into the agreement and continuing thereafter.

122.    Plaintiff suffered emotional distress as a legal result of the conduct by Defendants of which

Plaintiff complains. Plaintiff suffered mental distress, suffering and anguish as a legal result of

Defendants' outrageous conduct, reacting to discharge with humiliation, embarrassment,

anger, disappointment and worry, all of which is substantial and enduring. Plaintiff will seek

leave to amend this complaint to state the amount that will proceed according to proof at trial.

123. At all material times, Defendants, and each of them, knew that Plaintiff depended on her security as an insured Liberty Mutual Insurance Company customer. At all material times, Defendants were in a position of power over Plaintiff, with the potential to abuse that power. Plaintiff was in a vulnerable position because of her relative lack of power, becoming insured elsewhere, because she had placed trust in Defendants, because she relied upon her employment as a source of income for her support, because a wrongful denial of Plaintiff's claim of total loss and termination of Plaintiff's insurance would likely harm Plaintiff's ability to find other insurance, and because of the great disparity in bargaining power between Plaintiff and Defendant and DOE'S I through X. Defendants were aware of Plaintiff's vulnerability and the reasons for it.

124. Notwithstanding such knowledge, defendants, and each of them, acted oppressively, fraudulently, maliciously, in willful and conscious disregard of Plaintiff's rights, and with the intention of causing or in reckless disregard of probability of causing injury and emotional distress to the Plaintiff to preserve Liberty Mutual Insurance Company, and Defendants DOE'S I through X's economic self-interest over Plaintiff's economic interest.

125. Further, Defendants were informed of the oppressive, fraudulent and malicious conduct of their employees, agents and subordinates, and ratified, approved, and authorized that conduct by failing or otherwise refusing to respond to Plaintiff's request.

126. The foregoing conduct of Defendants, and each of them, was intentional, willful and malicious and Plaintiff is entitled to punitive damages in an amount to conform proof.

127. Plaintiff also is entitled to fees and costs pursuant to Tennessee law and T.C.A. §56-7-101 and§ 56-7-101, et seq.

### PRAYER

WHEREFORE Plaintiff prays for judgement against Defendants, and each of them, as follow:

1. For a money judgement representing compensatory damages and all other sums of money including, but not limited to Two Hundred Thirty-Nine Thousand Three Hundred Eighty-One Dollars and Seventy-Five Cents ($239,381.75), together with interest on these amounts according to proof;

2. For a money judgement for mental pain and anguish and emotional distress, according to proof;

3. For an award of punitive damages of Seven Hundred Twenty- One

4.     Thousand Six Hundred Forty-Five Dollars and Twenty-Five Cents ($721,645.25), according to proof;

5. For the costs of suit and fees to be presented at trail;

6. For judgement and post-judgement interest;

7. For any other relief that is just and proper;

8. For fees pursuant to T.C.A. 56-6-101 et seq.


RESPECTFULLY SUBMITTTED:

By: *Melissa Freeman*
Melissa Tricelle Freeman
605 Shannon Avenue
Chattanooga, Tennessee 37411
423.290.3235


STATE OF TENNESSEE                )
                                                        )
COUNTY OF HAMILTON          )

Melissa Freeman being first duly sworn makes an oath that the statements made in her foregoing Petition are true as of her own knowledge and belief and her Petition is not made out of levity or in collusion with the Defendants, but in sincerity and truth for the causes mentioned in the Petition and that she is justly entitled to the relief herein sought.

*Melissa Freeman*

Melissa Freeman

WITNESS my hand this the _21ˢᵗ_ day of _DECEMBER_ , 2016

_[signature]_
NOTARY PUBLIC
My Commission Expires: _9-17-27_