UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MELISSA TRICELLE FREEMAN, ) | |
| ) | Case No. 1:16-cv-502 |
| *Plaintiff*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Susan K. Lee |
| LIBERTY MUTUAL INSURANCE ) | |
| COMPANY and DOES I–X, ) | |
| ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION

Before the Court are Defendant Liberty Mutual Insurance Company's ("Liberty Mutual"): (1) partial motion to dismiss for failure to state a claim (Doc. 18); and (2) motion to enforce settlement agreement (Doc. 25). For the following reasons, Liberty Mutual's motions (Docs. 18, 25) will be **GRANTED**.

### I. BACKGROUND

According to Plaintiff, she entered into an insurance contract (the "Policy") with Liberty Mutual in December 2002 to cover risk of loss to her home (the "Property"). (Doc. 2, at 2.)[1] Plaintiff alleges that she made timely payments on the Policy at all relevant times. (*Id.* at 2–3.) On August 22, 2013, a fire erupted, severely damaging the Property and its contents. (*Id.* at 3.) Plaintiff filed a claim with Liberty Mutual under the Policy for damages to the Property, but Liberty Mutual denied the claim and "cancelled Plaintiff's insurance on the [P]roperty." (*Id.* at 3–4.)

---

[1] Unless otherwise noted, ECF document numbers refer to the above-captioned case.

On August 1, 2014, Plaintiff, through counsel, filed a complaint against Liberty Mutual in Hamilton County Circuit Court. (*Freeman v. Liberty Mutual Insurance Company*, No. 1:14-cv-266 ("*Freeman I*"), Doc. 1-1.) Plaintiff asserted claims for: (1) breach of contract; (2) bad-faith denial of insurance coverage; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) intentional interference with business relations; (6) negligence; (7) discharge in violation of public policy; and (8) intentional infliction of emotional distress. (*Id.*) Liberty Mutual removed *Freeman I* to this Court on September 5, 2014, on the basis of diversity jurisdiction. (*Freeman I*, Doc. 1.) After Liberty Mutual filed a partial motion to dismiss, Plaintiff sought leave to amend her complaint to add five causes of action based upon the Tennessee Consumer Protection Act ("TCPA"). (*Freeman I*, Docs. 6, 8.) In January 2015, the Court granted Liberty Mutual's partial motion to dismiss and dismissed Plaintiff's claims for intentional misrepresentation, negligent misrepresentation, intentional interference with business relations, negligence, and intentional infliction of emotional distress, because they either: (1) were subsumed under her breach-of-contract claim; (2) were barred by Tennessee Code Annotated § 56-7-105, which provides the sole extracontractual remedy for bad-faith denial of insurance claims; or (3) failed to state a claim. (*Freeman I*, Doc. 12, at 3–5.) The Court also dismissed Plaintiff's claim for discharge in violation of public policy because Plaintiff's complaint failed to plead an employment relationship, an essential element of that claim. (*Id.* at 6.) Finally, the Court denied Plaintiff leave to amend her complaint because amendment would have been futile. (*Id.* at 6–7.) The Court reasoned that, under an amendment to the Tennessee Code, the TCPA was eliminated as a viable cause of action for insurance disputes accruing after April 29, 2011, and Plaintiff's cause of action—an insurance dispute—accrued in 2013. (*Id.*)

After the Court issued its memorandum and order on Liberty Mutual's partial motion to dismiss, only Plaintiff's breach-of-contract and bad-faith claims remained. (*Id.* at 6.)

According to Liberty Mutual, the parties engaged in settlement negotiations in November 2015. (Doc. 25-1.) On November 24, 2015, after a telephone conversation, Plaintiff's counsel sent an e-mail to counsel for Liberty Mutual stating: "[M]y client has authorized me to settle for Ten Thousand Dollars ($10,000.00)." (*Id.* at 2.) Plaintiff's counsel inquired what the next steps would be to execute the settlement, when he could expect the check, and whether they should file a joint or unilateral motion for dismissal. (*Id.*) Counsel for Liberty Mutual agreed to draft the release, which he described as "[n]othing special, . . . but it will contain a confidentiality provision ONLY as to the amount of money paid . . . ." (*Id.*) He also requested a W9 form from Plaintiff's counsel, which Plaintiff's counsel provided the next day via e-mail. (*Id.* at 1–2.) On December 9, 2015, counsel for Liberty Mutual sent Plaintiff's counsel a proposed "Confidential Settlement Agreement and Release." (Doc. 25-2.)

According to Plaintiff, she "was suffering from depression, and [was] estranged from [her] spouse" during the settlement negotiations in late 2015. (Doc. 34, at 9.) Nevertheless, Plaintiff avers she "was informed of [Liberty Mutual's] settlement offer in the amount of $10,000.00" and "said yes to the settlement offer over the phone . . . ." (*Id.*) However, according to Plaintiff, after reviewing the proposed "Confidential Settlement Agreement and Release," she "had concerns about the terms of the agreement," specifically: (1) how she would be paid out under the proposed settlement agreement; and (2) that she would "be held responsible for mortgage payments." (*Id.* at 9–20.) Plaintiff avers that, upon learning these terms, she "refused to sign" the proposed agreement. (*Id.* at 10.) Accordingly, the proposed settlement agreement appears to never have been executed. (*See generally* Docs. 25, 26, 34.)

3

Plaintiff avers that she "was encouraged to dismiss the case without prejudice to obtain additional time to secure an expert for trial" and agreed to do so, "believing that [she] would have an opportunity to take this case to trial." (Doc. 34, at 10.) On December 23, 2015, Plaintiff, through her counsel, filed a motion to voluntarily dismiss her case without prejudice. (*Freeman I*, Doc. 26.) However, because Defendant had filed an answer in the case, barring Plaintiff from dismissing her complaint without court approval, the Court proposed certain terms in granting Plaintiff's dismissal and gave the parties fourteen days in which to lodge objections to those terms. (*Freeman I*, Doc. 27.) After that time period passed without objection, the Court dismissed Plaintiff's case without prejudice and ordered that "[s]hould Plaintiff decide to refile her case . . . [a]ll previous rulings and entries on the docket . . . must stand, and, if refiled before the Court, the case will be in the same procedural posture as when it was dismissed." (*Freeman I*, Doc. 28.) In addition, the Court ordered that "[i]f Plaintiff *prevails* in her refiled suit, she must pay Defendants' expenses, costs, and fees for work performed in the first suit that cannot be used in the second suit." (*Id.*)

On December 21, 2016, Plaintiff, proceeding *pro se*, filed the above-captioned matter. (Doc. 2.) Plaintiff asserts claims against Liberty Mutual for: (1) breach of contract; (2) bad-faith denial of insurance coverage; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) intentional interference with business relations; (6) negligence; (7) discharge in violation of public policy; and (8) intentional infliction of emotional distress. (*Id.*) Plaintiff also asserts the same five causes of action under the TCPA she attempted to assert in *Freeman I*. (*Id.*) Plaintiff's complaint tracks her proposed amended complaint in *Freeman I* almost word for word. (*Compare id.*, *with Freeman I*, Doc. 8.) On August 4, 2017, Liberty Mutual filed a motion to dismiss Plaintiff's intentional-misrepresentation, negligent-misrepresentation,

4

intentional-interference-with-business-relations, negligence, discharge-in-violation-of-public-policy, intentional-infliction-of-emotional-distress, and TCPA claims. (Doc. 18.) On September 12, 2017, Liberty Mutual filed a motion to enforce settlement agreement. (Doc. 25.) Liberty Mutual also seeks attorneys' fees in connection with its motion to enforce the settlement agreement. (Doc. 26, at 7–8.) Liberty Mutual's motions are now ripe for review.

## II. MOTION TO DISMISS

### a. *Standard of Law*

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(c). A 12(c) motion for judgment on the pleadings is analyzed using the same standards that apply to 12(b)(6) motions for failure to state a claim. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Thus, on a Rule 12(c) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. For purposes of this determination, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting

5

*JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007)). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This factual matter must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker*, 539 F.3d at 549.

    **b.** *Analysis*

Liberty Mutual seeks to dismiss Plaintiff's intentional-misrepresentation, negligent-misrepresentation, intentional-interference-with-business-relations, negligence, discharge-in-violation-of-public-policy, intentional-infliction-of-emotional-distress, and TCPA claims, based on the procedural posture of *Freeman I*, including the Court's order granting Liberty Mutual's motion to dismiss and the judgment therein. (Doc. 18.)

In granting a motion to voluntarily dismiss a case, a court may impose terms necessary to offset prejudice to the defendant. *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*,

583 F.3d 948, 954 (6th Cir. 2009). To offset the prejudice to Liberty Mutual in *Freeman I*, the Court, without objection from Plaintiff, ordered that, if refiled, the case would resume the same procedural posture, with all previous rulings and entries to stand. (*Freeman I*, Doc. 28.) Plaintiff now attempts to assert the same five state-law claims that the Court dismissed in *Freeman I*. (*Freeman I*, Doc. 12, at 3–5.) Given the Court's previously imposed terms and the reasoning in the Court's prior opinion dismissing these claims, the Court will **GRANT** Liberty Mutual's motion to dismiss Plaintiff's claims of intentional misrepresentation, negligent misrepresentation, intentional interference with business relations, negligence, and intentional infliction of emotional distress.

In addition, Plaintiff's THRA claims fail for the same reasons articulated by the Court in denying her leave to amend in *Freeman I*. (*See Freeman I*, Doc. 12, at 6–7.) Tennessee Code Annotated § 56-8-113, which became effective on April 29, 2011, provides that "title 50 and [title 56] shall provide the sole and exclusive statutory remedies and sanctions applicable to an insurer, person, or entity licensed, permitted, or authorized to do business under this title for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance . . . ." This statute "effectively eliminates the TCPA as a viable cause of action for disputes arising from the insurer-insured relationship because the TCPA is not contained in Title 50 or Title 56" for claims accruing after April 29, 2011. *Montesti v. Nationwide Mut. Ins. Co.*, 970 F. Supp. 2d 784, 789 (W.D. Tenn. 2013). Accordingly, because Plaintiff alleges the fire occurred in 2013 and there is no question the facts alleged establish that this is an insurance dispute, her TCPA claims are statutorily barred. The Court will, therefore, **GRANT** Liberty Mutual's motion to dismiss Plaintiff's THRA claims.

### III. MOTION TO ENFORCE SETTLEMENT AGREEMENT

Turning to Liberty Mutual's motion to enforce the settlement agreement, Liberty Mutual argues that it formed a binding settlement agreement with Plaintiff when her counsel accepted Liberty Mutual's settlement offer of $10,000 via e-mail. (Doc. 26, at 3–7.) Liberty Mutual, therefore, seeks to enforce the terms of the alleged settlement agreement and requests attorneys' fees in connection with filing its motion to enforce. (*Id.*)

#### *a. Enforcement*

Plaintiff does not dispute that she "verbally agreed to settle the pending case for $10,000." (Doc. 34, at 3.) However, she argues that there was not a "meeting of the minds" on the material terms of the settlement agreement. (*Id.* at 3–4.)

A federal district court is authorized to enforce agreements to settle litigation pending before it, "even if that agreement has not been reduced to writing." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) (internal quotation omitted). To encourage settlement and to avoid costly litigation, "courts should uphold settlements whenever equitable and policy considerations allow." *Henley v. Cuyahoga Cty. Bd. of Mental Retardation & Developmental Disabilities*, 141 F. App'x 437, 442 (6th Cir. 2005) (citing *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976)). However, "[b]efore enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645–46 (6th Cir. 2001). "The intent of the parties when entering into a settlement agreement is an issue of fact to be decided by the district court." *Henley*, 141 F. App'x at 443 (quoting *Brown v. Cty. of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989)). Where facts are disputed, a district court should hold an evidentiary hearing. *RE/MAX*, 271 F.3d at 646. "However, no evidentiary hearing is required where an agreement is clear and

unambiguous and no issue of fact is present." *Id.* Moreover, an evidentiary hearing is not required where neither party requests one. *See id.* Summary enforcement of a settlement agreement is appropriate "where no substantial dispute exists regarding the entry into and the terms of the agreement." *Id.*

The existence of a valid agreement is governed by state law. *Id.* Under Tennessee law, "[a] settlement agreement is merely a contract between the parties to the litigation," and, as such, is governed by contract law. *Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 385 (Tenn. 1996) (citation and internal quotation marks omitted). Tennessee contract law dictates that, to be valid, "a contract must result from a meeting of the minds of the parties in mutual assent to the terms." *Id.* at 386 (citation and internal quotation marks omitted). Further, "a contract is enforceable only to the extent that it is assented to by the parties." *Id.* (citation and internal quotation marks omitted).

Here, the Court declines to hold an evidentiary hearing in this matter because: (1) neither party requested one; and (2) even viewing the facts in the light most favorable to Plaintiff, a valid settlement agreement was formed between the parties under Tennessee law. The Sixth Circuit decision in *Harris v. City of Chattanooga*, 137 F. App'x 788 (6th Cir. 2005), is particularly instructive here. The plaintiff in *Harris* filed a 42 U.S.C. § 1983 action against the City of Chattanooga. *Id.* at 790. The plaintiff's counsel faxed a letter to counsel for the defendant stating: "As we discussed yesterday . . . via telephone, my client has accepted your offer on behalf of your client . . . to settle this matter for a sum of twenty-eight thousand five hundred dollars." *Id.* Plaintiff's counsel also wrote: "I assume that your client will also pay all court costs. I further assume that this amount shall constitute a settlement of all claims associated with this matter . . . ." *Id.* Shortly thereafter, the defendant's counsel sent the

9

plaintiff's counsel a proposed agreed order of dismissal and a release of claims. *Id.* These documents were never signed. *Id.* Instead, two weeks later, counsel for the plaintiff sent a letter to the defendant's counsel stating that his client "ha[d] reversed her position on her acceptance of [his] client's offer" and made a "counter offer" in the amount of $75,000. *Id.* According to the plaintiff, she believed that the $28,500 amount would be the first installment of a total settlement amount of $100,000, and wished to withdraw from the settlement once she realized that $28,500 would be the total. *Id.* at 791. The defendant filed a motion to enforce the settlement agreement, which was granted after an evidentiary hearing. *Id.* On appeal, the Sixth Circuit noted that, in Tennessee, "[t]he general rule . . . is that an attorney cannot surrender substantial rights of a client, including agreeing to dismissal of litigation which permanently bars a client from pursuing his claim, without the express authority of the client." *Id.* at 793 (quoting *Absar v. Jones*, 833 S.W.2d 86, 89–90 (Tenn. Ct. App. 1992)). However, "[u]nder Tennessee law, where a principal gives an agent express authority to settle a case, either orally or in writing, the principal is bound by the acts of the agent within the scope of authority expressly conferred upon the agent." *Id.* at 794 (citing *S. Ry. v. Pickle*, 197 S.W. 675 (Tenn. 1917)). According to the Sixth Circuit, even though Plaintiff claimed she did not fully understand the terms of the settlement, she "initially gave [her attorney] express authority to settle the matter, and then later reversed her position." *Id.* The Sixth Circuit, therefore, upheld the district court's decision to enforce the settlement agreement and noted that "any dissatisfaction Plaintiff has regarding the settlement can only be directed towards her attorney." *Id.*

Here, as the plaintiff in *Harris* did, Plaintiff gave her attorney express authority to settle *Freeman I* for $10,000. Plaintiff herself avers that, after she "was informed" that Liberty Mutual had offered $10,000, she "said yes to the settlement offer over the phone . . . ." (Doc. 34, at 9.)

10

Plaintiff's attorney then formed a valid agreement with counsel for Liberty Mutual to settle the case for $10,000, which he confirmed via e-mail. (Doc. 25-1, at 2.) At that point, an agreement had been reached on all material terms.[2] That the attorneys had reached an agreement on behalf of their clients was further evidenced by the fact that Plaintiff's counsel provided Liberty Mutual with a W9 form for the preparation of the settlement check. (*Id.* at 1–2.) Pursuant to Tennessee law, Plaintiff gave her attorney express authority to settle the case, and Plaintiff is, therefore, bound by her attorney's act of accepting the terms of the settlement agreement. Accordingly, the parties have reached a binding agreement to settle this case, whereby Liberty Mutual will pay Plaintiff $10,000 in exchange for the dismissal of this case and a release of the claims.

Plaintiff also argues that the Court should decline to enforce the settlement agreement on equitable grounds, specifically "on the grounds of mental incapacity, misrepresentation and/or overreaching." (Doc. 34, at 5.) Under Sixth Circuit precedent, however, "only the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement." *Henley*, 141 F. App'x at 443 (quoting *Brown*, 872 F.2d at 174). Moreover, Plaintiff bears the burden of showing mutual mistake or fraud. *Id.* Plaintiff does not assert any evidence that would amount to mutual mistake or fraud on any party. Accordingly, Defendant's motion to enforce the settlement agreement will be **GRANTED**.

---

[2] To the extent Plaintiff argues that the parties did not reach an agreement on who would be responsible for mortgage payments, she only asserts this was a material term after the parties had formed a binding agreement. (*See* Doc. 34, at 10: "I refused to sign the Confidential Settlement Agreement and Release after I learned . . . that I was [to] be held responsible for mortgage payments."). By this point, Plaintiff had already "said yes to the settlement offer . . . ." (*Id.* at 9.) "[I]f a party directs their lawyer to settle a case, and that is communicated, the fact that a person later on may change their mind about the settlement does not affect the fact that it is settled." *Harris*, 137 F. App'x at 794. Moreover, Plaintiff appears to misunderstand that a settlement can be effected without a signed writing. *Therma-Scan*, 217 F.3d at 419.

### b. *Attorneys' Fees*

Liberty Mutual asserts that it is entitled to its attorneys' fees incurred in enforcing the settlement agreement because Plaintiff acted in bad faith by filing this lawsuit asserting claims she knew were settled during *Freeman I*. (Doc. 26, at 7–8.) According to Liberty Mutual, Plaintiff "is improperly attempting to use the judicial system to delay the final resolution of this case." (*Id.*)

Typically, each party will bear its own attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 275 (1975). However, a federal court may assess attorneys' fees against a party "for willful violation of a court order . . . [or] for bad faith or oppressive litigation practices . . . ." *Id.* (internal citations omitted).

Here, the facts do not support bad faith on behalf of Plaintiff. Plaintiff's affidavit demonstrates that, subjectively, she honestly did not believe she had reached a binding settlement agreement with Liberty Mutual. (*See* Doc. 34, at 9–10.) Specifically, Plaintiff avers that she agreed to dismiss *Freeman I* without prejudice, "believing that [she] would have an opportunity to take this case to trial." (*Id.* at 10.) Additionally, Liberty Mutual never sent Plaintiff the $10,000 settlement amount, further reinforcing her mistaken belief that a binding settlement agreement had not been formed. Accordingly, Liberty Mutual is not entitled to attorneys' fees, and its request will be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Liberty Mutual's Rule 12(c) partial motion to dismiss (Doc. 18) and motion to enforce settlement agreement (Doc. 25) are **GRANTED**. The Court further **ORDERS** that: (1) Plaintiff's claims are **DISMISSED WITH PREJUDICE**; and (2) in

accordance with the settlement agreement, Liberty Mutual is to confer the settlement amount of $10,000 upon Plaintiff. Liberty Mutual's request for attorneys' fees is **DENIED**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**